My name is Brian Norcross, and I'm from Montana. I'm a private practice attorney, CJA panel member, and I'm here today representing the appeal for Mr. Willie Allen. The central argument that I'm making on behalf of Mr. Allen is that the government engaged in sentencing and trafficking. The government has said that I have made the claim of outrageous government conduct. So I believe that the government's conduct was outrageous. The basic argument is, is that they did engage in sentencing and entrapment. In this case, the agents had made several purchases of methamphetamine and cocaine from Mr. Allen. They were relatively small amounts. Initially, there was under 2 grams. Subsequent purchases were a little over 2 grams. There was one further down the road in, I believe in January, where agents purchased, I believe, about 14 grams. Now, in claiming entrapment, do you have to show that the individual would have been unwilling to make this kind of a sale and was kind of coerced or importuned by the government to do it? That, I believe, Your Honor, is the typical approach. However, that the fact remains that it's a typical requirement, not just the approach. Well, Your Honor, in situations where the – I believe it's whether the defendant would be inclined to create or to commit either a more serious crime or a lesser or a more serious crime. In this situation, Mr. Allen was certainly predisposed to deal the drugs, but he was not predisposed to sell larger amounts. And though the government had claimed that Mr. Allen – one of the reasons they were continuing their investigation of Mr. Allen is because that they believe that he was going to the State of Washington to get drugs. Well, I don't know that this Court or any other court has seen situations where a defendant is going to travel all the way from Billings, Montana to Spokane or Seattle, Washington, for a gram or two or three of drugs. The fact of the matter is, is that Mr. Allen's sources were always in Billings, Montana. The agents – though Agent Chartier testified that he had stated – that Mr. Allen had stated and that his accomplice, April Wallace, had stated that they were going to the State of Washington to purchase drugs. There were no phone records. There were no wire transfers. There was none of the typical types of evidence that presented and backed up that claim. In fact, nothing but the agent's testimony even indicated that there was – that the investigation of Mr. Allen extended beyond purchases of small drugs locally. And it was – the agent testified at the hearing that Mr. – or that April Wallace had become his confidant and had told him this. Well, in fact, there is no evidence that that ever occurred. There was never any evidence presented by the government. There was never any evidence in the discovery that any of the individuals that Mr. Allen was receiving drugs from, or that April Wallace, including the fact that she was also setting up her own – trying to set up her own distribution with Agent Chartier, was getting the drugs anywhere but locally. These are self-serving statements. These were statements that the government had made at the – at the last minute to – to show that it had a legitimate purpose in furthering its investigation of Mr. Allen. When, in fact, the very first drug purchase that the agents made had set up, the supplier for Mr. Allen showed up in a van. Mr. Allen goes out, gets the drugs, brings them back into the house. The cooperating witness goes into the house, comes back with the drugs. And we're talking a little less than – than two grams. So Mr. Allen certainly wasn't engaged in out-of-state drug dealing. And … Do you have any sentencing enhancement cases to cite to us that support your position? Well, I believe that Stouffer is a – is a case on point here in terms of – of setting out the idea that though the guidelines have – have set out instances of what sentencing entrapment is, the – the guidelines do not provide an exhaustive list of what – what types of entrapment that the government can engage – the conduct that the government can engage in when entrapping an individual. Mr. Allen, again, did admit that he was predisposed to deal drugs. But this case is simply a – a case of where all of his drug dealings were – were small time. Well, excuse me. No one asked him, well, can you deal in – in – can you get me 100 grams? No, Your Honor. That's usually what you get when they're trying to build up that – you know, the guidelines, when they're trying to build up the length of the sentence.  Yes. And that factors in. That's correct, Your Honor. Sometimes they say yes to give the impression that they're a lot bigger in this business than they really are. That happens quite often. In this particular situation, Mr. Allen was – was approached by the agents to see that – to see if he could get larger quantities of drugs. And he was unable to do that. The most, again, that he was able to get was – was approximately 14 grams. Agents requested and tried to get him to supply larger quantities. He was simply unable to do that and – and had told them so. He would not do that. So this is, again, a situation where the agents kept coming back over and over and over again. So the district court found that – or held that the – the multiple transactions were, I think his words was, a legitimate investigatory function. The government was trying to probe the depth and extent of the criminal enterprise. And that was based on the government's testimony and the testimony that was at – given at trial based on what the – the agents said that Allen had – Mr. Allen had testified. So our standard of review, I take it, is clear error? That's correct, Your Honor. And – and your argument, as I hear it, is that there wasn't enough evidence. Is that your argument as to why the district court was clearly erroneous and relying on the testimony? That is part of it, Your Honor. The – the fact is, is that there was no evidence other than agents – Well, there was evidence. There was testimony at trial. Well, that's – that's correct, Your Honor. So there was some evidence there. That's correct. But there was – there was no corroborating evidence. In other words, there were no – there were no phone records. And is there a case that says that that additional evidence in the absence of corroborating evidence, there would be a clear error in the district court's determination? I believe there – that the cases require that there be some evidence in support of just a – if a person is going to make testimony about any kind of a situation where there's a statement such as Mr. Chartier's, that there would be some other It is evidence, but it has – I don't believe it has a whole lot of weight. In this situation, there was absolute – there's a paucity of – of – of evidence, frankly, that would even indicate that – that Mr. Allen was engaged in anything but local drug dealing. There was no evidence either of, like I said, of phone records, wire transfers, the kinds of things that this Court and every district court in the state of Montana has – in drug dealings has seen when – when there has been interstate drug trafficking, where there's wire – wires of large sums of money to out-of-state drug dealers or drug suppliers. There is several instances where people have traveled with large sums of money to bring back larger quantities of drugs. But as I said earlier, it is just incredulous that someone would travel all the way from Billings, Montana, to the state of Washington to buy small amounts of drugs. And again, there is just no evidence to support Agent Chartier's statement other than – than the fact that he had claimed that April Wallace had told him that, as well as Mr. Allen had told him that, when in fact that none of the – none of the wires that the people were dealing with had any of that information in it at all. So what I'm saying is that there was simply Agent Chartier's statement, standing alone, that this was a legitimate purpose for his continued purchases of small amounts of drugs. All right. Do you want to save a little time? I would not. Thank you. Good morning again. I'll start with the law, and then – and then I'll talk about the record, which I don't think – I have a great deal of disagreement about the individual who's held responsible for the amounts of drugs that were put into the indictment. And I guess the government has benefits from the – the rule of apprendi now that we're putting drug amounts into the indictment. Then when we have situations like this, a defendant cannot come in and say, oh, I only was responsible for much less than – than what the PSR is saying. Here, the drug amounts. Mr. Norcross concedes he was predisposed to trafficking those amounts. And once we have those two stipulations, then there is no case out there that supports their theory. There is none. The only one that – that he came up with was Stauffer, which – which is a very interesting case. And it – it – as we discuss in our brief, it predates very important revisions to the guidelines to spell out the various situations where you can make a claim of sentencing manipulation. So one would be where the government is trying to get you to engage in a transaction, and they're like, would you buy 1,000 grams? And you say, I can't afford 1,000 grams. You say, I'll give it to you at half price. And then they're stuck with 1,000 grams. Well, that's unfair. And the guidelines took that into account. Then there's a situation where, as – as you asked, Judge Pregerson, the government is insisting, get us – get us 1,000 grams. Go out and get it. Go out and get it. And you say, okay, but you really can't get 1,000 grams. You don't have that kind of access. And they try to hold you responsible for 1,000 grams, but – but you never had that connection to 1,000 grams. You misrepresented your connection. Those are the types of situations where you get relief under the guidelines, and this is not one of them. In Stouffer, a gentleman went to trial, and they – they found him guilty of distributing LSD, but there was no quantity determination. Later at sentencing, they came in and said 10,000 doses. And he said, wait a minute. That – I am not responsible for 10,000 doses, and you definitely didn't establish it at trial. That is nothing like this case. Here, he pleads guilty to the amounts. Just to correct some things on the record, and – and this is just one site, but there were several. Excerpts of Record 41, the – the evidence of out-of-state drug dealing were from statements by Allen to the undercover officer. That's why they thought he got drugs from out-of-state. Then there are the statements of April Wallace, who sold drugs for the defendant. I mean, they – this was not a lark. They – they believed this, and they looked into it. And typically, when you engage in these transactions, and you finally decide that you're going to pull the plug on somebody you've been dealing with, what you're hoping as an investigator is that they'll cooperate, and they'll tell you where they're getting their drugs. And then they get a 5K, and they won't get the high That's not what happened here. I would add that the circumstantial evidence of this, far from being incredulous, as – as defense counsel said, this guy is selling high-quality methamphetamine. This wasn't made in a barn out in the wilderness. This is really, really good stuff that sells for a lot of money. And in Billings, Montana, that – those type of drugs come from the state of Washington. I mean, that's just a fact. They come up the coast, and they come over, and a lot of these drug cases involve people driving in from Spokane. And that's where the defendant was previously from, and that would make lots of investigators very suspicious of him. So that's the real record, and that's why they were investigating him, and there's no support for sentencing for that. All right. Thank you. Rebuttal? The fact that there is a lot of high-quality drugs coming into Montana – in fact, there used to be a lot of drug labs in Montana that were pumping out some very high-quality as well. I think the quality has always been an issue, no doubt. But the fact of the matter is, is that there was no evidence that my client went to the state of Washington to bring drugs back. Well, that matter's submitted. And next item is U.S. vs. Jennifer Lynn Devereaux.
judges: B. Fletcher, Pregerson, Ikuta